FRUGÉ, Judge
(dissenting).
The writer is of the opinion that the trial court is correct. The purpose of LSA-R.S. 33:1381 is to enable the people of a particular municipality to modify or change their form of city government. The statute is remedial in nature. To propose a charter to a municipality, the governing authority pursuant to § 1382 may on its own motion cause said charter to be framed and submitted for adoption, or such a proposal may be made by a petition filed with the governing authority signed by not less than 25% of the qualified electors of the city.
If the governing authority so chooses to cause a home rule charter to be submitted, it shall appoint a Charter Commission of five members to create such. Within one year after appointment, the Commission must prepare and submit a charter. LSA-R.S. 33:1383.
It would seem that the reason for appointing or having established a separate entity in the form of a Charter Commission is to prevent those who presently govern the municipality from being subjected to the temptation of submitting only new charters which would perhaps compromise public interest in favor of their personal gain or advantage. Also, the new Charter Commission is formed of those people representing distinct interest groups within the community.
The purpose of the act as above mentioned will be defeated if the discretion of the present governing authority is determinative of whether or not an election shall be held. If this were so, any charter desired by the public could be defeated before the people of the city had a chance to vote thereon simply by the City Council’s deciding that no election is to be held. Thus, the statutes in question should be ruled mandatory in nature in that the present governing authority of a municipality has no right generally to refuse to submit a proposed charter as prepared pursuant to LSA-R.S. 33:1381 et seq. for election. Once the governing authority appoints the particular commission, it should have no discretion or option with regard to the calling of an election on a submitted home rule charter.
The three members comprising the present commission satisfy a quorum. Vacancies created by the death and retirement of two of the commissioners were not filled by the City Council when the filling of these vacancies was requested by Mayor Karst. The Council now excepts to proceedings taken as a result of their noncompliance with the statutory mandatory provisions of § 1387 providing that the vacancies shall be filled by appointment of the governing authority. The writer fails to see how the Council can reject their duties as outlined by the statute and following this rejection question subsequent proceedings. Although the statute requires that four representative groups compose this Commission, a lack of two of these representatives through the dereliction of duty on the part of the Council appointing them will not be an inherent, disabling factor which would defeat a charter submitted and accepted by the people of Alexandria. The fact that defendants-appellants urge that the Council should have been sued in mandamus for the purpose of having the vacancies properly filled suggests an admission by those appellants as to the mandatory nature of the statute as well as their noncompliance therewith.
It seems obvious that the legislature not only intended that the statutes in question *397 be mandatory, but also envisioned the potential multiple submission of charters by one Commission due to the possible defeat of a charter submitted for election. To reaffirm our conviction that the legislature did contemplate these possible defeats, one need only look to § 1387 which provides that the terms of office of the specific commissioners shall be four years. Why would the commissioners have a four-year term if upon presentation of the charter within a year after appointment, said charter was defeated. This would mean that an additional three years of useless office holding would result.
Appellants also urge that LSA-R.S. 33:1383 provides that a charter be submitted within one year of appointment of the Commission and that there has been no compliance therewith. However, the charter in question was not the first presented. As stated in the facts, a charter was submitted to the Council within one year after the appointment of the Commission, and this charter failed to be adopted. The Charter Commission has, therefore, followed the letter of the law.
Appellants also submit that § 1388 states that proposals to amend, modify, or repeal home charters should not be submitted more often than every two years. However, no charter was ever adopted by the City of Alexandria. The purpose of this particular provision is not only to prevent an overburdening of the people of a particular municipality with a number of elections, but to give these same people a chance to live under a government as defined under the new charter that they have adopted and accepted. The people of Alexandria are not now amending, modifying, or repealing their charter for they have none.
The Charter Commission composed of the members now serving thereon, has in all good faith and earnestness pursued the duties with which they have been assigned. Their actions as a quorum thus far have been executed for the purpose of public good as outlined in LSA-R.S. 33:1381 et seq. The City Council of Alexandria should not be allowed to refuse to call an election as per the above-mentioned statute when its only defense is its own noncompliance with that same statute.
For the foregoing reasons, I respectfully dissent from the majority opinion.